FILED

99 MAY 12 AM 7:53

U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| VALENCIA JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-98-AR-1098-S |
| | ) | |
| CITY OF BESSEMER, a municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED
MAY 12 1999

### MEMORANDUM OPINION

Currently before the court is a motion for summary judgment filed by defendant, City of Bessemer ("City"), on March 12, 1999. Plaintiff, Valencia Johnson ("Johnson"), initially brought this suit against Officer Archie Arrington ("Arrington") in his individual capacity, as well as against City. On December 1, 1998, this court granted Arrington's motion for summary judgment and dismissed all counts against him, leaving City as the only defendant. *See Memorandum Opinion, Dec. 1, 1998; Order, Dec. 1, 1998* (collectively "the December opinion and order"). For the reasons set out in this opinion, *infra*, the court determines that Johnson's remaining claims are due to be dismissed.



Posture of the Case

Count II of Johnson's Amended Complaint alleges that City failed to provide adequate training to Arrington, who is a police officer employed by City, leading to a deprivation of Johnson's constitutional right to be free from excessive force. Count III of the Amended Complaint makes several claims under Alabama law, alleging that Arrington's actions constituted "negligence, wantonness, and outrageous conduct, excessive force, and Assult [sic] and Battery." Johnson alleges that City is liable for these alleged torts under the principle of "respondieiat superior" [sic]. Because the December opinion and order dismissed all claims against Arrington, Count III remains viable only insofar as it maintains claims against City.

Pertinent Undisputed Facts

This case arises out of incidents which occurred on November 7, 1997 at a dance for Jess Lanier High School students at the Bessemer City Auditorium. In sum and substance, Johnson alleges that Arrington, who worked as an off-duty officer at the dance, exercised excessive force upon her when he took hold of her arm and forcibly escorted her from the premises. The court's opinion of December 1, 1998 sets out the facts of this case in full detail. Not wishing to be unnecessarily repetitious, the court directs the parties' attention to that opinion for its

presentation of the pertinent undisputed facts.  Virtually all the facts of this case, material and immaterial, are undisputed, making this case ripe for summary judgment.

## Analysis of Vicarious Liability Claims Against City

Johnson attempts to proceed against City on two theories of vicarious liability.  She first alleges that Arrington violated federal law by using excessive force against her, actionable under 42 U.S.C. § 1983 ("§ 1983").  She claims that City is legally responsible for the officer's alleged constitutional violations because they occurred as a result of City's failure to train Arrington adequately.  Under state tort law, she argues that City is liable for Arrington's alleged torts because a principal is liable for the actions of its agent, if performed within the line and scope of that agency (*i.e. respondeat superior*).  Both approaches to vicarious liability present interesting theoretical questions, because this court has already determined that Arrington is entitled to qualified immunity against the § 1983 claims and to discretionary immunity under Alabama law against the tort claims.  The first questions is, "Can vicarious liability exist for City where no underlying liability for its agent exists?"  The answer to this question is "yes."  A finding of qualified immunity does not necessarily imply that Arrington committed no § 1983 violation.  To be

entitled to qualified immunity, the court need only determine that Arrington deprived Johnson of no **"clearly established"** constitutional rights, or, to put it another way, that he had no reason, as a reasonable officer, to think that he was acting in an unconstitutional manner. Where rights arguably exist but do not rise to a "clearly established" level, a police officer is nonetheless entitled to the protection of qualified immunity. Similarly, discretionary function immunity, under Alabama law, shields officers from personal liability for negligent acts done within the line and scope of duty. A finding that immunity attaches does not require a finding that no negligence occurred.

In the present case, this court determined that Arrington violated no clearly established federal rights; accordingly, Arrington was entitled to qualified immunity. Whether he arguably violated rights not clearly established is beside the point, for purposes of determining City's vicarious liability. Under § 1983, <u>no *respondeat superior* liability exists</u>. Under the rule established in *Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978)("Monell"), § 1983 liability exists against a municipality only where the violation results from municipal custom or official policy. *Id.*, at 690-91. A failure to train police officers can rise to the level of municipal "policy" in some circumstances, but only where the failure to train results from the municipality's "deliberate indifference" to the dangers

such inadequacy would likely create. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  Indifference can only be "deliberate" where the municipality "knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).  In other words, a municipality must have some <u>notice</u>, either actual or constructive, that its training policy will likely lead to violations of citizens' statutory or constitutional rights.

  Johnson has presented **no** evidence to satisfy the *Monell* standard for § 1983 municipal liability.  There is no evidence to suggest that City had any reason to believe its training policy was inadequate.  There is no evidence that City had any sort of notice, regarding Arrington or any other officer, to the effect that its training policy was likely to lead to violations of statutory or constitutional rights.  There is plainly no evidence of "deliberate indifference."  In fact, the undisputed evidence indicates that City provided regular annual training to all of its police officers, including training about crowd control and the use of physical tactics. *Depo. of Officer Roper*, at 10-12.  Absent any evidence of a deliberately indifferent policy or custom on City's behalf, the court concludes that City cannot be liable under § 1983.

Johnson's state law claims require a different analysis. Even though this court has determined that Arrington was entitled to discretionary function immunity under Alabama law, no determination was made as to whether Arrington committed tortious acts. It is undisputed that Arrington grabbed Johnson by the left arm, forcibly escorted her to the exit of the Bessemer City Auditorium, and required her to leave. It is also undisputed that the rules of the facility prohibited sitting on the stage, whether or not Johnson was aware of the prohibition. Arrington clearly had authority to enforce those rules, but his authority was limited by the relevant constitutional restraints. It is furthermore undisputed that Arrington's use of force resulted in bruises to Johnson's arm, strains to the soft tissues, physical pain, and embarrassment. The court is therefore presented with the question of whether these undisputed events constituted negligence, outrageous conduct, excessive force, or assault and battery.

Although Johnson nowhere explicitly argues *res ipsa loquitur*, she apparently bases her tort claims on some theory akin to it. She seems to assume that her bruises alone constitute proof that one or more torts were committed - *the thing speaks for itself!* Given that it is undisputed that Arrington's actions caused her bruises, *etc.*, she appears to

assume that liability is a foregone conclusion. This court is unpersuaded.

All negligence-based claims require plaintiffs to provide, among other things, evidence of a duty and a breach. All tort claims require plaintiffs to demonstrate damages. Johnson simply has not provided sufficient evidence to persuade a reasonable jury that any tort occurred. The court is moved to wonder aloud why Johnson has neglected to provide any of the forms of evidence which one would expect. If Johnson truly had medical damages, where is the doctor's report? Where is the doctor's affidavit? Where are the photographs of her bruises? Deposition testimony suggests that at least one fellow student, one chaperone, one teacher, and more than one of the other off-duty police officers saw Arrington escort Johnson from the auditorium. Why has Johnson neglected to submit affidavits of any witnesses regarding Arrington's conduct? She has not documented her alleged emotional distress, the alleged damage to her reputation, her medical bills, or her alleged diagnosis. Of the elements required to prove a tort, only the existence of a duty is established, for admittedly Arrington had a duty not to use excessive force upon Johnson. But given the record evidence, the court finds that it is simply impossible to determine whether a breach actually occurred, or whether anything more than a bruised arm and a bruised teenage ego resulted -- surely *de minimis*

damages, if any. The central conclusions permitted by the evidence are threefold: 1) Johnson broke the rules of the City's facility, albeit unwittingly. 2) Unable to elicit a satisfactory response from Johnson, Arrington undertook to enforce the rule by forcibly removing her from the dance, an action within his authority. 3) Johnson experienced embarrassment, bruising, and some lingering pain in her arm as a result. These conclusions cannot reasonably support any of Johnson's tort claims.

The court acknowledges that Johnson's emotional pain and physical damages, whatever they were, might have been avoided if Arrington had chosen another course of action to enforce the facility's rules. Alternative means of enforcement were likely available, such as verbally ordering Johnson to leave the dance, even if shouting directly into her ear were necessary to effect the communication in that loud environment. Although this entire dispute might have been avoided, the availability of alternatives does not mean that Arrington's actions were negligent or otherwise tortious. The evidence presented in this case simply does not support a finding that Arrington acted outside the bounds of reasonableness, beyond his authority, or without the appropriate degree of temperance and patience required of police officers when dealing with members of the public who are breaking rules. Every police officer who clutches the arm of a citizen to get his attention is not guilty of assault and battery.

The court previously determined that discretionary function immunity shielded Arrington from personal liability for any damages caused by his alleged negligence. The court now determines that the record evidence is insufficient to support any of Johnson's tort claims. Where no underlying tort exists, City cannot be held vicariously liable under *respondeat superior*. Accordingly, Johnson's remaining claims under state law are due to be dismissed.

### Conclusion

For the foregoing reasons, the court concludes that Johnson has failed to meet the evidentiary burdens required to support her claims against City under § 1983 or state law. City's motion for summary judgment is due to be granted. A separate and appropriate order will be entered.

Done this 12th day of May, 1999.

  _____
  WILLIAM M. ACKER, JR.
  UNITED STATES DISTRICT JUDGE